IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 3:17-cr-00032 |
| ) | Judge Richardson |
| JAMES FREI ) | |
| ) | |

## **MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Suppress (Doc. No. 45). The Government filed a response (Doc. No. 46). For the reasons discussed below, Defendant's Motion to Suppress will be denied.

## **FACTUAL BACKGROUND**

On July 27, 2016, during the course of an on going investigation involving Defendant, Detective Michael Adkins of the Metropolitan Nashville Police Department obtained a judicial subpoena from a Davidson County, Tennessee court. (Doc. No. 45-1). The court issued the subpoena pursuant to Tenn. Code Ann. § 40-17-123, which allows law enforcement to obtain bank records when an officer has "reason to believe that a criminal offense has been committed or is being committed and that requiring the production of documents or information is necessary to establish who committed or is committing the offense or to aid in the investigation and prosecution of the person or persons believed to have committed or believed to be committing the offense[,]" a standard lower than probable cause. (*Id.*). The subpoena allowed the Government access to Defendant's bank records, specifically, account information and transaction history from First Citizens Bank and Trust for the periods of January 1, 2015 until July 27, 2016. (Doc. No. 45-2; Doc. No. 45-3).

On March 8, 2017, a federal grand jury indicted Defendant on nine-counts. The indictment charges Defendant with four counts of enticing a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, using materials that had traveled in interstate commerce; one count of using any facility and means of interstate commerce to entice a minor to engage in sexual activity constituting a criminal offense; three counts of traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor under the age of 16; and one count of knowingly transporting child pornography using any means and facility of interstate commerce. (Doc. No. 1).

The Government intends to introduce Defendant's bank records seized from First Citizens Bank and Trust at trial to prove that Defendant traveled interstate to Nashville, Tennessee, as well as to corroborate multiple victim statements. (Doc. No. 46 at 3). On November 6, 2018, Defendant filed a motion to suppress the bank records. (Doc. No. 45).

**ANALYSIS**

**I.     Defendant's *Carpenter* Argument**

Defendant asserts the bank records, which incidentally contain information regarding his apparent physical location at particular times when particular transactions involving the bank occurred, should be suppressed because seizure of such records without a warrant is in violation of the Fourth Amendment. Defendant cites the United States Supreme Court's recent decision in *Carpenter v. U.S.*, 138 S. Ct. 2206, 2213 (2018) in support of his argument. (Doc. No. 45).

In *Carpenter*, a robbery suspect provided information to law enforcement regarding the identity of several accomplices, including the defendant (Carpenter). 138 S. Ct. at 2212. Based on this information, the district court issued two court orders, pursuant to the Stored Communications Act, 18 U.S.C. § 2703(d), which the Government used to obtain the defendant's cell-site records

from MetroPCS and Sprint. *Id*. These records enabled the Government to obtain "12,898 location points cataloging [the defendant's] movements—an average of 101 data points per day." *Id*. The defendant moved to suppress the government's seizure of records revealing his cell-site location information ("CSLI"). The district court denied the defendant's motion to suppress, and the Sixth Circuit affirmed. The U.S. Supreme Court granted certiorari.

The Supreme Court reversed. The Court held that acquisition of CSLI is a "search" for Fourth Amendment purposes; therefore, "the Government must generally obtain a warrant supported by probable cause before acquiring such records." *Id*. at 2221. The Court explained that CSLI "provides an all-encompassing record of the holder's whereabouts" and that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI. *Id*. at 2218. The Government argued that the CSLI records fell within the third-party doctrine, articulated by the Court in *Smith v. Maryland*, 442 U.S. 735 (1979), and *United States v. Miller*, 425 U.S. 435 (1976), and therefore were "fair game." *Id*. at 2219. The Court disagreed and concluded that the third-party doctrine did not apply in the instant case, because "there are no comparable limitations on the revealing nature of CSLI" since CSLI contains a "detailed chronicle of a person's physical presence compiled every day, every moment, over several years." *Id*. The Court reasoned this implicated privacy concerns "far beyond" the concerns considered in *Smith* and *Miller*. *Id*. Further, CSLI information is not truly "voluntary" because "apart from disconnecting the phone from the network, there is no way to avoid leaving behind a trail of location data. As a result, in no meaningful sense does the user voluntarily 'assume[] the risk' of turning over a comprehensive dossier of his physical movements." *Id*. at 2220 (citing *Smith*, 442 U.S. at 745).

In reaching its decision, the Court reviewed "the intersection of two lines of cases." *Id*. at 2214-15. One set involves an individual's privacy interest in his or her physical location and movements. *See United States v. Jones*, 565 U.S. 400 (2012). The other line of cases addresses the diminished privacy interest when a defendant voluntarily turns over information to a third-party, *i.e.* the third-party doctrine. *See Miller*, 425 U.S. at 437 and *Smith*, 442 U.S. at 740. The Court in *Carpenter*, as discussed above, decided that CSLI information fell in the line of cases preserving a privacy interest in records that reveal an individual's physical location. *Carpenter*, 138 S. Ct. at 2221-22. Defendant argues his bank records at issue here also fall in this category. On the other hand, the Government argues the records fall neatly into the third-party doctrine, as discussed by the Supreme Court in *Miller*.

In *Miller*, while investigating an illegal distillery, law enforcement obtained the defendant's bank records, including "all records of accounts, *i.e.*, savings, checking, loan or otherwise[,]" from the defendant's banks through a subpoena. *Miller*, 425 U.S. at 437-38. The U.S. Supreme Court held that a warrant was not required to obtain the defendant's bank records, because "there was no intrusion into any area in which [the defendant] had a protected Fourth Amendment interest." *Id*. at 440. The Court reasoned that the "Fourth Amendment does not prohibit the obtaining of information revealed to a third-party[,]" such as a bank, because such records are not the individual's "private papers[,]" but instead, "the business records of the banks." *Id*. at 440-41. "The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Id*. at 443. Thus, the Court concluded that an individual does not have an expectation of privacy in financial records held by a bank. *Id.*

Here, the Court agrees with the Government that Defendant's bank records fall within the third-party doctrine for several reasons. First, the location information contained in bank records

is inherently different from the type of location information that is revealed through CSLI. As the Government aptly points out, the only location revealing data available in bank records is information identifying the vendor and the city where the defendant used his bank card. (Doc. No. 46 at 8). In contrast, CSLI provides an "all-encompassing record of the holder's whereabouts" that allows law enforcement to "achieve[] near perfect surveillance, as if [the defendant] had an ankle monitor to the phone's user." *Carpenter*, 138 S. Ct. at 2217-18 ("[W]hile the third-party doctrine applies to telephone numbers and bank records, it is not clear whether its logic extends to the *qualitatively different* category of cell-site records.") (emphasis added).

Second, there is a significant difference in the degree of "voluntary exposure" when choosing to use a bank card versus CSLI, which is generated automatically. To create a bank record, an individual must choose to voluntarily participate in a commercial transaction with his or her bank card. In contrast, "a cell phone logs a cell-site record by dint of its operation, without any affirmative act on the user's part beyond powering up." *Id*. at 2220. "Virtually any activity on the phone generates CSLI" and the only way to avoid a phone generating CSLI is to "disconnect[] the phone from the network." *Id*.

Finally, the Court finds the Supreme Court's explicit guidance resounding:

> Our decision today is a narrow one. *We do not express a view on matters not before us: real-time CSLI* or "tower dumps" (a download of information on all the devices that connected to a particular cell site during a particular interval). We do not disturb the application of *Smith* and *Miller* or call into question conventional surveillance techniques and tools, such as security cameras. *Nor do we address other business records that might incidentally reveal location information.*

*Id*. (emphasis added); *see also United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) ("But the third-party doctrine continues to apply to 'business records that might incidentally reveal location information' including telephone numbers and bank records." (quoting *Carpenter*, 138 S. Ct. at 2220)).

5

In consideration of the above mentioned reasons, the Court holds that Defendant's bank records at issue fall squarely within the third-party doctrine, and thus he has no expectation of privacy in these records. Accordingly, the bank records will not be suppressed.

**II.     Good-Faith Exception to the Exclusionary Rule**

Furthermore, even if the Court were to hold that Defendant had an expectation of privacy in his bank records, the records are still admissible pursuant to the good-faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 919-21 (1984). The exclusionary rule does not apply when the police conduct a search in objectively reasonable reliance on binding judicial precedent.[1] *Davis v. United States*, 564 U.S. 229, 240 (2011). Here, Defendant was indicted on March 8, 2017, and *Carpenter* was decided on June 22, 2018. Accordingly, *Carpenter* was not binding judicial precedent at the time Defendant's bank records were obtained via judicial subpoena. Therefore, law enforcement's objectively reasonable reliance on then-existing law (including the lower-court rulings in the *Carpenter* case itself at the time of the seizure of the bank records) renders the exclusionary rule inapplicable.

Since *Carpenter*, numerous circuit courts as well as district courts within the Sixth Circuit have held that the exclusionary rule does not apply where law enforcement obtained CSLI without a warrant supported by probable cause prior to *Carpenter*, as law enforcement officers were acting in objectively reasonable good-faith on then-existing law.[2] *See, e.g., United States v. Curtis*, 901

---

[1] Although this exception to the exclusionary rule is called the "good-faith" exception, it appears that its application does not turn on law enforcement's subjective "good faith." The Sixth Circuit has instructed courts to focus on the objective reasonableness of law enforcement's reliance when conducting the so-called "good-faith" analysis. *See United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) ("[T]he objective reasonableness determination does not examine the subjective states of mind of [the particular] law enforcement officer . . . .") (citation omitted); *see also United States v. Chapman-Sexton*, -- F. App'x --, No. 17-3933, 2018 WL 6653018, at *15 n.10 (6th Cir. Dec. 18, 2018) (Bush, J., concurring).

[2] At the motion to suppress hearing, Defendant argued that the good-faith exception did not apply in this case because the Supreme Court did not apply the good-faith exception in *Carpenter* itself. However, the Supreme Court did not

F.3d 846, 848-49 (7th Cir. 2018); *United States v. Joyner*, 899 F.3d 1199, 1204-05 (11th Cir. 2018); *United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018); *United States v. Wallace*, 885 F.3d 806, 810-11 (5th Cir. 2018); *United States v. Chambers*, -- F. App'x --, No. 16-163-cr, 2018 WL 4523607, at *2-3 (2d Cir. Sep. 21, 2018); *United States v. Shaw*, No. 5:17-26-KKC, 2018 WL 3721363, at *1 (E.D. Ky. Aug. 3, 2018); *United States v. Williams*, No. 2:17-cr-20758-VAR-DRG, 2018 WL 3659585, at *3 (E.D. Mich. Aug. 2, 2018). Further, because officers obtaining CSLI without a warrant supported by probable cause prior to *Carpenter* were not engaging in the kind of improper or concerning conduct that needs to be deterred, no deterrent effect—*i.e.*, no deterrent of conduct of the type that should be deterred—would arise out of the Court's use of the exclusionary rule. *See United States v. Justice*, 462 F. App'x 451, 417 (6th Cir. 2012) ("Because the sole purpose of the exclusionary rule is to deter future Fourth Amendment violations . . . [a criminal defendant] must show that suppressing the evidence will yield real deterrent value" (internal quotations omitted)). Therefore, the Court concludes, in the alternative, that the good-faith exception to the exclusionary rules applies.

---

reach this issue of the good-faith exception in *Carpenter* simply because the Sixth Circuit did not rule on this issue. Instead, the Sixth Circuit based its holding on the conclusion that when law enforcement obtained CSLI it was not a "search" for Fourth Amendment purposes. *See United States v. Carpenter*, 819 F.3d 880, 890 (6th Cir. 2016). In a concurring opinion, Judge Stranch agreed that Carpenter's motion to suppress should be denied on Fourth Amendment grounds, but went further and concluded that the motion to suppress should also be denied because of the good-faith exception. *Id*. at 896 (Stranch, J., concurring). However, because the Sixth Circuit panel majority did not rule on this issue, the issue of the good-faith exception was not raised before the Supreme Court. Moreover, the Supreme Court in *Carpenter* remanded the case "for further proceedings consistent with this opinion." 138 S. Ct. at 2223. There appears to be no reason why the Government could not assert the good-faith exception on remand. Therefore, the Court does not view the fact that the Supreme Court did not apply the good-faith exception in *Carpenter* as a reason not to apply it here.

## CONCLUSION

For the foregoing reasons, the Court holds Defendant did not have an expectation of privacy in his bank records. Therefore, the Court will **DENY** Defendant's Motion to Suppress (Doc. No. 45).

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE